## HARLEY INGERSOLL v. ORLANDO M. BARNES.

*Trover for machinery—Refusal to deliver—Evidence of conversation.*

A man bought a steam engine and other machinery to put into a mill which he was building, but it was expressly stipulated that title thereto should not pass until it was fully paid for. He afterwards sold the mill to his uncle without having paid for the machinery, and the owner thereof, after demanding it, brought trover for it against the purchaser. It appeared that defendant knew his nephew was embarrassed and had indorsed his paper and took the property

to save himself. *Held* proper, in support of the action, to show that before buying, defendant had a conversation with plaintiff in which he admitted that he knew there was something about the latter's claim; that his nephew had not paid for the machinery; that defendant had been to see if plaintiff had any chattel mortgage on it and did not find any; and that when he purchased he had not said anything to his nephew about the matter or asked him if plaintiff was paid, and had not said anything to plaintiff though he had frequent opportunities to do so.

Where machinery is sold to be set up in a mill, but with a stipulation that title shall not pass until it is paid for, and without the vendor's knowledge it is so attached to the realty as to make it, under ordinary circumstances, a fixture, and before it is paid for the property is sold to some person who had sufficient knowledge of the owner's claim to put him on inquiry, trover will lie for the conversion of the machinery.

Where a demand for property is made before bringing trover, and defendant replies that he neither admits nor denies the claim and shall not consent to plaintiff taking away property nor forbid him to do so, there is a sufficient refusal to establish a conversion.

Error to Ingham. Submitted Oct. 13. Decided Oct. 19.

TROVER. Defendant brings error. Affirmed.

*N. F. Handy* for plaintiff in error.

*Edward Cahill* for defendant in error.

MARSTON, C. J. Barnes brought trover for the conversion by defendant of a steam-engine, balance-wheel and some other things pertaining thereto.

This property was purchased by Luther A. Ingersoll from Barnes and W. S. George, and according to the written agreement the price agreed upon was $600, one hundred of which was to be paid in cash, and the balance in three equal annual payments, the first to be made one year thereafter, and for which a promissory note was given. It was also agreed therein, that after the cash payment was made Ingersoll should be allowed to take the engine and put it in the flouring mill he was then building, and the agreement also contained this provision: "But it is fully and distinctly understood that the said property, although put into said

mill, and used there or elsewhere, shall be and remain the property of said George and Barnes until they are paid in full for said engine, and the title is not to pass until full payment as herein provided." Other provisions were also inserted allowing the vendors to enter and take possession of and remove the property in case of default. Barnes succeeded to the rights and interests of George.

Luther A. Ingersoll after erecting the mill and running it for some time, becoming involved conveyed the mill property by warranty deed to the plaintiff in error.

It is claimed that the manner in which this property was placed in the mill made it a part of the realty and that this case is therefore governed by *Knowlton v. Johnson* 37 Mich. 50, and kindred cases. It does not appear that either Barnes or George had any knowledge of the manner in which this engine was attached to the realty, previous to the purchase by plaintiff in error. The case therefore in this respect stands as the ordinary one of a sale of an engine to be put up and used as a motive power in a mill.

On the part of the plaintiff below it was urged that the defendant, plaintiff in error, had sufficient knowledge of the plaintiff's claim to have put him upon his guard, and to put upon him the duty of making inquiry, acting as a prudent, cautious man should do under such circumstances, and the court so charged the jury. If there was evidence to sustain this charge, then clearly this case is not governed by *Knowlton v. Johnson.*

The purchase of the engine from Barnes and George was made in November, 1878, and the conveyance of the mill property was made to plaintiff in error July, 1879.

The plaintiff in error knew that this engine had been purchased by his nephew on long time, but says he did not know that any security was given for the purchase price; he also knew that his nephew during the time he was engaged in the milling business was embarrassed, and on several occasions plaintiff in error had indorsed his nephew's paper, and it was because of his embarrassments and to save himself that he took a conveyance of the property.

Barnes testified that he had an interview with plaintiff in error, Ingersoll, about this engine before the commencement of this suit, when he, Barnes, told him, "Your nephew told me that he told you all about my claim," and he—plaintiff in error—said, "I knew there was something about it; that he hadn't paid for it; I went to see if you, Barnes, had any chattel mortgage on it and didn't find any."

That such an examination was made is not disputed, indeed admitted. Although Mr. Ingersoll was examined he did not, except inferentially, deny having the above conversation with Mr. Barnes. He also testifies that at the time he made the purchase, he did not say anything to his nephew about this matter or ask him if Barnes was paid, nor did he say anything to Mr. Barnes although he had frequent opportunities daily of seeing and asking him.

This in my opinion was competent testimony to be submitted to the jury, and this, when viewed in the light of all the evidence, they may have considered amply sufficient to show that Mr. Ingersoll considered it safe to purchase, provided he found no mortgages upon the property. The facts though few are significant, and in the light of previous decisions in this court we cannot say that there was a total want of evidence upon this point.

It was also urged on the part of the plaintiff in error that although a demand had been made for this property before suit brought, yet that there had been no refusal to comply therewith. The refusal or reply to the demand was in writing and as follows: "You now claim the engine as belonging to you. I neither admit nor deny your claim. I shall not consent to your taking the property, nor shall I forbid your doing so. We are both responsible for our acts and I suppose the law will protect us in our rights and punish us for any unlawful acts which we may do."

If a demand for property can thus be answered and not constitute a conversion, it will be easy hereafter to avoid the responsibility which a refusal entails. This in my opinion was sufficient evidence of a conversion to entitle the plaintiff to maintain trover.

I do not not discover any error in the record, and in my opinion the judgment should be affirmed with costs.

COOLEY and GRAVES, JJ. concurred.

CAMPBELL, J.   I do not think the record shows such facts as made it the duty of Ingersoll to inquire further than he is shown to have done, and I am of opinion there was error in holding otherwise.